## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Lenny R. Kenner, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | **1:22cv1358 (AJT/LRV)** |
| | ) | |
| Beth Cabel, | ) | |
|     Respondent. | ) | |

### <u>MEMORANDUM OPINION</u>

Lenny R. Kenner ("Kenner" or "Petitioner"), a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his May 29, 2018 convictions in the Circuit Court of Northampton County, Virginia for animate object sexual penetration of a six-year-old girl; aggravated sexual battery of the same child; and custodial sexual abuse of that same child. Respondent has filed a Rule 5 Answer and Motion to Dismiss, with a supporting brief and exhibits. [Dkt. Nos. 5-7]. Kenner was notified of his right to respond as required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 8], but did not respond. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition will be dismissed.

### I. Procedural History

In a two-day jury trial in Northampton County Circuit Court that concluded on June 13, 2017, Petitioner was convicted of three felonies: animate object sexual penetration of a six-year-old girl, over a time period from November 1, 2014, through September 30, 2015, in violation of Virginia Code § 18.2-67.2; aggravated sexual battery of the same child during that same time period, in violation of Virginia Code § 18.2-67.3; and custodial sexual abuse of that same child during the same time period, in violation of Virginia Code § 18.2-370.1. [Dkt. No. 7-2]. The jury

fixed his punishment at life imprisonment (mandatory for the conviction of animate object sexual penetration), plus an additional five years in prison for aggravated sexual battery and two years in prison for custodial sexual abuse. After a sentencing hearing on May 7, 2018, the trial court imposed the punishment fixed by the jury and final judgment was entered on May 29, 2018. [*Id.*].

Kenner, by counsel, filed a petition for appeal in the Court of Appeals of Virginia. The court granted the petition for appeal, which contained three assignments of error: (1) the trial court erred by allowing the introduction of child pornography evidence; (2) the trial court erred by denying trial counsel's motion to withdraw; and (3) the trial court erred by denying his motion to have the jury individually polled. *Kenner v. Commonwealth*, 835 S.E.2d 107, 109 (Va. App. 2019) ("*Kenner* I"). After briefing and argument the court affirmed Kenner's convictions. [*Id.* at 112-17].

Kenner, by counsel, next filed a petition for appeal in the Supreme Court of Virginia, that raised four assignments of error: (1) the Court of Appeals erred in affirming the trial court's decision admitting evidence of child pornography found on Kenner's computer because it was not relevant and unduly prejudicial; (2) the Court of Appeals erred in affirming the trial court's decision denying trial counsel's motion to withdraw; (3) the Court of Appeals erred in not considering the merits of assignment of error 2; and (4), the Court of Appeals erred in affirming the trial court because the trial court failed to have the jury individually polled. The Supreme Court of Virginia granted an appeal on assignments of error 1 and 4 but refused the petition for appeal as to assignments of error 2 and 3. [Dkt. No. 7-11].

The Supreme Court of Virginia affirmed Kenner's convictions. *Kenner v. Commonwealth*, 854 S.E.2d 493 (Va. 2021) ("*Kenner* II"). The court summarized the evidence at trial as follows:

> At the age of six, D.T. moved into an apartment with her cousin, Angela Robinson. Kenner, Robinson's fiancé, also lived in the apartment. D.T. later returned to her

mother's home in October 2015, after her seventh birthday. After her return, D.T. told her mother and a neighbor that Kenner touched in and around her "privates" when she lived with him. A warrant for Kenner's arrest was issued and he was arrested in November 2015.

Immediately following Kenner's arrest, police executed a search warrant at the apartment. Officers recovered a desktop computer from Kenner's bedroom, a laptop from the kitchen, and computer disks from his bedroom closet. A password-protected user account on the desktop contained an email account with Kenner's name, an autofill profile for Kenner with his phone number and address, a student loan document associated with Kenner, and eBay and Facebook accounts in Kenner's name. The desktop computer also contained information that the computer was used to stream, download, or attempt to download numerous child pornography videos from "Ares," a peer-to-peer file sharing site. The titles of the child pornography videos described adults having sex with young children or adults teaching young children to have sex.

****

D.T. testified at trial that Kenner had her sit on his lap in a red chair in his bedroom while he put his hands both on and inside her vagina. During the abuse, Kenner forced her to watch "sex videos" of naked adults engaging in different sex acts. D.T. testified that the videos were "on his computer. They came from Google." D.T. also testified that Kenner had told her that when she grew up, she would be "his girlfriend." Kenner also instructed D.T. to not tell anyone that he touched her.

Dr. Alicia Meyer ("Dr. Meyer"), a licensed clinical psychologist, evaluated D.T. and testified at trial as an expert in the psychological assessment and treatment of childhood trauma. Dr. Meyer diagnosed D.T. with post-traumatic stress disorder, which she explained can occur after an individual has endured a "big stressful event," including sexual violence. D.T. told Dr. Meyer "something about a Taser, either witnessing or experiencing [Kenner] using a Taser." Dr. Meyer testified that D.T.'s symptoms directly correlated with her allegation that Kenner sexually abused her.

Dr. Michelle Clayton ("Dr. Clayton"), a child-abuse pediatrician, conducted a physical examination of D.T. Dr. Clayton testified that D.T. had "paired circular marks" on her thighs that were consistent with injuries from a Taser or stun gun.

FBI Special Agent David Desy ("Agent Desy") testified that the desktop computer found in Kenner's bedroom contained forty files of child pornography that included thirty-eight images and two videos. Over the Commonwealth's objection, the trial court refused to allow the photographs and videos to be shown to the jury. The trial court did allow the Commonwealth to introduce the titles of the files at trial. The titles included: "Fuck young naked nude little girl cum," "6 year old fucked," "Toddler Fucked In Pussy," "10 yr fuck little girl," "Teaching sex to daughter," "6 years old kid how to fuck 16 year old boy," and "dad on daughter full penetration sex." Agent Desy testified that the files were downloaded, or attempted to be downloaded between November 2014 and September 2015, during the time D.T. lived with Kenner and Robinson.

*Kenner* II, 854 S.E.2d at 495-96.

The court found the challenged evidence—the introduction of the titles of the child pornography downloads found on defendant's desktop computer—was "relevant and material" because "the titles were relevant to establishing the elements of 'lascivious intent' and that the acts were accomplished 'knowingly and intentionally;'" held that "the legitimate probative value of the evidence received by the trial court in the present case outweighed its incidental prejudice to Kenner;" and held that "the evidence was relevant to show Kenner's conduct or attitude towards the victim, motive, method and intent." [*Id.* at 499-500]. The court also found that because Kenner's trial was bifurcated, with a separate sentencing phase, the motion to individually poll each juror regarding their guilty verdicts came "too late" because the motion was made after the sentencing phase had begun. The trial court, therefore, did not err in denying the motion. [*Id.* at 501].

On January 4, 2022, Kenner filed a *pro se* petition for writ of habeas corpus in the Supreme Court of Virginia, alleging the following claims:

A.     Petitioner's "5th Amendment Right … was violated when he was charged and convicted of 'Multiplicity of Indictments.'"

B.     Petitioner's "6th and 14th Amendment Rights … were violated when he was denied the right to confront an adverse witness."

C.     Petitioner's "14th Amendment Right … was violated when 'the prosecutor acted in misconduct' by 'knowingly introducing false evidence.' While coaching the alleged victim to influence and mislead the jury to obtain a wrongful conviction."

D.     Petitioner's "14th Amendment Right … was violated when 'the presiding judge abused his discretion by allowing deceitful evidence of child pornography before a connection was made.' Also in 'not allowing ineffective counsel to withdraw from the case.'"

E. Petitioner's "5th Amendment Rights … were violated when he was convicted on insufficient evidence."

F. Petitioner's "6th and 14th Amendment Right … were violated when [Petitioner] was not afforded effective and competent counsel during pre-hearings, trial, sentencing and appeal phases of trial."

[Dkt. No. 15 at 22].[1] The court dismissed Kenner's habeas petition on October 18, 2022. Claims A, B, C, and E were each dismissed as defaulted pursuant to *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) because they could have been raised at trial and pursued on direct appeal. The court found Claim D was barred from review in habeas proceedings under *Henry v. Warden*, 576 S.E.2d 495, 496 (2003), because each component of Claim D had been raised at trial and decided on direct appeal, and therefore could not be raised in a habeas corpus petition. In Claim F, the court found that Petitioner had failed to satisfy the prejudice prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984) and dismissed the allegation that counsel was ineffective for not timely requesting the individual poll of the jurors; and that the remaining allegations of ineffective assistance of counsel failed to satisfy both prongs of *Strickland.*

On November 10, 2022, the Petitioner timely filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In Attachment 1 to the petition, Petitioner has attached a copy of his state habeas petition, which the Court construes as an attempt to raise the same six claims he raised in his state habeas petition in this Court.

A.      Petitioner's "5th Amendment Right … was violated when he was charged and convicted of 'Multiplicity of Indictments.'"

B.      Petitioner's "6th and 14th Amendment Rights … were violated when he was denied the right to confront an adverse witness."

C.      Petitioner's "14th Amendment Right … was violated when 'the prosecutor acted in misconduct' by 'knowingly introducing false evidence.' While coaching

---

[1] Claim F in the state habeas petition contained six specific allegations of ineffective assistance of counsel. Petitioner alleges counsel was ineffective because he: (1) failed to timely request the trial court to poll the jury; (2) did not know how to combat the Commonwealth's motion to allow admission of child pornography from his computer; (3) failed to meet with him prior to filing a petition for appeal; (4) failed to investigate "possible defenses"; (5) failed to seek a mistrial on the basis that the pornography was falsely connected to him; and (6) called only 10 of the 35 witnesses who had been subpoenaed. [Dkt. No. 15 at 63-65].

the alleged victim to influence and mislead the jury to obtain a wrongful conviction."

D.     Petitioner's "14th Amendment Right … was violated when 'the presiding judge abused his discretion by allowing deceitful evidence of child pornography before a connection was made.' Also in 'not allowing ineffective counsel to withdraw from the case.'"

E. Petitioner's "5th Amendment Rights … were violated when he was convicted on insufficient evidence."

F. Petitioner's "6th and 14th Amendment Right … were violated when [Petitioner] was not afforded effective and competent counsel during pre-hearings, trial, sentencing and appeal phases of trial."[2]

Attachment 2 to his petition appears to asserts additional claims, some of which duplicate claims

in Attachment 1, which respondent has numbered as follows:

4.     Counsel went to trial without any "preparations." [Dkt. No. 1-2 at 3].

5.     Counsel failed to challenge the indictments as "multiplicitous." [*Id.*].[3]

6.     Counsel failed to call Tara to the stand to show her behavior as someone who makes all of these types of things up. [*Id.* at 16].

7.     Counsel failed to object to the use of the child pornography for being false evidence. [*Id.* at 3].

8.     Counsel failed to poll the jury in a timely manner having seen some of the jurors come out of the deliberations shaking their heads in clear disagreement. [*Id.* at 3].

9.     Appellate counsel was ineffective for failing to mention false evidence used to convict him. [*Id.* at 4].

[Dkt. No. 7 at 5-6].

## II. Exhaustion and Procedural Default

---

[2] In reviewing a federal habeas petition, however, a district "court must consider claims as they are presented in the petition, reviewing them under the applicable standard . . . [and it is] the district court['s] duty to consider only the specific claims raised in a § 2254 petition." *See Folkes v. Nelsen*, 34 F.4th 258, 269 (4th Cir. 2022) (citations omitted); *Frey v. Schuetzle*, 78 F.3d 359, 360-61 (8th Cir. 1996) (holding district courts adjudicate only those claims upon which the petitioner seeks relief and do not decide claims upon which the petitioner never intended to seek relief).

[3] "An indictment is multiplicitous if it charges the same crime in two counts, subjecting the defendant to two punishments for the same crime in violation of the Double Jeopardy Clause." *United States v. Outlaw*, 464 F. App'x 165, 166 (4th Cir. 2012) (citing *United States v. Goodine*, 400 F.3d 202, 207 (4th Cir. 2005)).

"A habeas petitioner is generally barred from obtaining federal habeas review of a claim if he failed to exhaust the claim in state court." *Morva v. Zook*, 821 F.3d 517, 532 (4th Cir. 2016) (citation omitted). A federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court. *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000). "To [exhaust his claims], the petitioner must have presented to the state court 'both the operative facts and the controlling legal principles.'" *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). It is petitioner's burden to demonstrate he has exhausted his claims. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). However, presenting a claim in a procedural context in which the merits of the claim will not be considered, or will be considered only in special circumstances, does not constitute fair presentations of the claim. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court. *See Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006); *Corcoran*, 220 F.3d at 288; *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("We ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies.").

A separate but analytically related bar to federal habeas review is the doctrine of procedural default. "If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619. "A habeas petitioner is barred from seeking federal review of a claim that was

presented to a state court and 'clearly and expressly' denied on the independent, adequate state ground of procedural default." *Bennett v. Angelone*, 92 F.3d 1336, 1343 (4th Cir. 1996) (citations omitted). A state procedural rule is "adequate" if it is firmly established and regularly or consistently applied by the state court and "independent" if it does not depend on a federal constitutional ruling. *Yeatts v. Angelone*, 166 F.3d 255, 263-64 (1998).

### A. Exhaustion

The state habeas proceedings establish that Claims A, B, C, and E were each presented in the state habeas petition filed in the Supreme Court of Virginia and were expressly dismissed as defaulted pursuant to the rule of *Slayton v. Parrigan;* Claim D was presented on direct appeal; and that Claim F was dismissed under *Strickland.* The claims in Attachment 1 are exhausted.

Claim 4 alleges that counsel went to trial without any "preparations," which differs from the six specific allegations of ineffective assistance of counsel Kenner raised in his state habeas concerning polling, admission of child pornography evidence, investigating unspecified defenses, not discussing the appeal with the petitioner, not seeking a mistrial, and failing to call unnamed witnesses. *See* n.1, *supra* (discussing state habeas Claim F). To the extent Petitioner's claim about "preparation" is intended to be the same as his state court Claim F about investigating adequate defenses, his claim is exhausted and will be addressed in the discussion of Claim F. However, Petitioner does not proffer what additional preparations were necessary or articulate how such preparations would have led to a reasonable probability of a different result at trial. Therefore, to the extent he intended to raise any other claim, it is conclusory in nature in that he has not identified any specific action or inaction of counsel and he fails to set forth the alleged resulting prejudice. *See Gilbert v. Moore*, 134 F.3d 642, 654 (4th Cir. 1998) (en banc) (finding attorney's ineffective conduct warrants habeas relief only if a petitioner can "convince the court that in the absence of

8

unprofessional errors by their attorney there is a reasonable probability . . . that 'the result of the proceeding would have been different'"); *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("[T]o obtain an evidentiary hearing on an ineffective assistance of counsel claim — or, for that matter, on any claim — a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a petitioner to an evidentiary hearing."); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (noting bald, unsupported assertions do not state a claim for relief).[4]

In Claim (5), Kenner alleges that counsel was ineffective because he failed to argue that the indictments were "multiplicious." [Dkt. No. 1-2 at 3].[5] In the state habeas proceeding,

---

[4] A petitioner's "unsubstantiated and largely conclusory statements fall far short of carrying his burden of persuasion as to the two elements of the test outlined in *Strickland*." *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005). *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) ("brief and conclusory allegations" are not sufficient to demonstrate that counsel's investigation was deficient or prejudicial under *Strickland*; *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed").

[5] Petitioner does not explain what he means by the use of the word "multiplicious." The Fourth Circuit noted the differences between duplicitous and multiplicious in *United States v. Burns*, 990 F.2d 1426 (4th Cir. 1993).

> On the one hand, duplicity is "the joining in a single count of two or more distinct and separate offenses." 1 Charles A. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed. 1982). Multiplicity, on the other hand, is "the charging of a single offense in several counts." *Id.* The signal danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense; hence reversal is warranted if the defendant actually was convicted on multiplicitous counts and subjected to multiple punishments.

*Id.* at 1438. To the extent he seeks to raise a double jeopardy claim because he was convicted of three sex offenses involving the same victim in a single trial, Kenner has no claim. "If the elements of each criminal statute 'do not overlap, then multiple punishments are presumed to be authorized.'" *United States v. Martin*, 523 F.3d 281, 291 (4th Cir.2008) (applying the *Blockburger* test) (quoting *United States v. Terry*, 86 F.3d 353, 356 (4th Cir. 1996)). Kenner was convicted of animate object penetration (Code § 18.2-67.2), which required proof that he penetrated the vagina or anus of a victim, who was less than thirteen years of age, with an animate object.

> While object sexual penetration and aggravated sexual battery have some elements in common, not every commission of object sexual penetration is a commission of aggravated sexual battery. Object penetration does not require proof of an "intent to sexually molest, arouse, or gratify any person" as required for conviction of aggravated sexual battery. Aggravated sexual battery is not composed entirely of elements that are also elements of object sexual penetration.

*Viars v. Commonwealth*, 2005 Va. App. LEXIS 147, at *5 (Va. App. Apr. 12, 2005). To prove custodial abuse (Code § 18.2-370.1), the prosecution must establish that the defendant is "18 years of age or older who, except as provided in § 18.2-370, maintains a custodial or supervisory relationship over a child under the age of 18 and is not legally married to such child and such child is not emancipated who, with lascivious intent, knowingly and intentionally." Consequently, unlike the other two convictions, the prosecution had to prove petitioner was over the age of eighteen,

Petitioner only raised the issue of "multiplicious" indictments as an error by the trial court for allowing him to be tried on "multiplicious" claims in state habeas. The state habeas court found that claim was barred by *Slayton v. Parrigan*, 205 S.E.2d at 682, and did not address it on the merits because Kenner had failed to raise it at trial and on direct appeal. [Dkt. No. 7-16 at 2]. His claim of ineffective assistance of counsel is defaulted because he failed to raise the claim in the state habeas proceeding. *See Corcoran*, 220 F.3d at 288.

In Claim (6), Kenner alleges his attorney "failed to call Tara to the stand to show her behavior as someone who makes all types of things up." [Dkt. No. 1-2 at 3]. Tara was the mother of the victim.[6] [*Id.* at 1-3]. Petitioner did allege that counsel was ineffective for not calling witnesses in his state habeas petition, but he failed to identify any of the witnesses. [Dkt. No. 7-16 at 5]. Claim (6) was not presented in the state habeas petition and is thus simultaneously exhausted and defaulted. *Corcoran*, 220 F.3d at 288.

In Claim (7), petitioner alleges that that counsel was ineffective for failing to object to the use of the child pornography for being false evidence. [Dkt. No. 1-2 at 3]. In state habeas in a portion of Claim (F) petitioner raised similar but not identical claims that "counsel did not know how to combat the motion *in limine* asking for the admission of the child pornography evidence," and that counsel did not seek a mistrial after discovering the child pornography found on petitioner's computer had been "falsely connected to him." [Dkt. No. 7-16 at 3-4]. The Court construes Claim (7) as exhausted because it is in essence the same as a portion of current federal Claim (F), *see* Dkt. No. 1-1 at 42, and will be addressed in the discussion of that claim.

---

that he was not married to the victim, and that petitioner maintained a custodial or supervisory relationship over the victim. It is readily apparent by review of the elements of the three offenses that each requires proof the others do not.

[6] Petitioner posits that Tara concocted the sexual abuse complaint as revenge against Petitioner and his partner for reporting Tara to social services. Petitioner, however, offers no evidence to support this theory, and it was the child victim, not Tara, who testified against him. [Dkt. No. 7-18 at 11-29].

In Claim (8), Kenner alleges counsel was ineffective because he failed "to poll the jury in a timely manner having seen some jurors come out of the deliberations room shaking their heads in clear disagreement." [Dkt. No. 1-2 at 3]. This claim was raised in state habeas as a portion of Claim (F) and is exhausted.

In Claim (9), petitioner alleges that his appellate counsel failed to mention the "false evidence used against him." [*Id.* at 4]. This claim was part of state Claim (F).

**B. Cause and Prejudice Excuse the Defaults**

Even if a claim has been defaulted a federal court may review it if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or a fundamental miscarriage of justice. *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2005). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citation omitted). To establish cause, a petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753-54; *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990).

To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis removed). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

> In some circumstances, ineffective assistance of counsel may be sufficient "cause" for a defaulted claim. *See Edwards [v. Carpenter]*, 529 U.S.[ 446,] 451 [(2000)]; *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005). Importantly, where a petitioner for federal habeas relief seeks review of claims defaulted during state habeas proceedings, he must show that he raised the ineffectiveness argument as a cause for the defaulted substantive claims during his state habeas proceedings. If a petitioner did not raise the ineffectiveness claim at the state habeas level, a federal habeas court may not consider it. *Edwards*, 529 U.S. at 452-53.

*Powell v. Kelly*, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), *aff'd*, 562 F.3d 656 (4th Cir. 2009).

The Supreme Court of Virginia found Claims A, B, C, and E were barred under *Slayton*, which the Fourth Circuit has repeatedly recognized constitutes "an adequate and independent state-law ground for decision." *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998) (citation omitted).[7] Petitioner has not established cause to excuse the default, and the claims will be dismissed.

### C. Defaulted Ineffective Assistance Claims (4), (5), and (6)

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the United States Supreme Court recognized a narrow exception for defaulted claims of ineffective assistance of trial counsel. *Martinez* held that "a federal court may review a 'substantial' ineffective assistance of counsel claim, notwithstanding procedural default, when state law required that the claim be raised in the state 'initial-review collateral proceeding' and, in that initial proceeding, 'there was no counsel or counsel in that proceeding was ineffective.'" *Vandross v. Stirling*, 986 F.3d 442, 451 (4th Cir. 2021) (quoting

---

[7] The Court notes that even if Claim E (sufficiency of the evidence) was not defaulted, the evidence at trial was sufficient to satisfy the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held that a federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." [*Id.* at 324]. "The standard of review for an insufficient evidence claim is deferential to the finder of facts; it is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.'" *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 934 (E.D. Va. 2000) (citation omitted). Importantly, a court may not question the fact finder's determinations of witness credibility. *See Sumner v. Mata*, 455 U.S. 591, 591-93 (1982) (per curiam); *Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The record establishes the evidence was sufficient to support all three of Kenner's convictions.

*Martinez*, 566 U.S. at 17; citing *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (identifying the four elements necessary to apply the *Martinez* exception)).

Although Kenner does not invoke the narrow exception recognized in *Martinez* to excuse his default, none of his defaulted claims of ineffective assistance of counsel satisfy the *Martinez* exception. To come within the exception, Kenner must demonstrate that counsel "was ineffective under the standards of *Strickland*" and that his claim of ineffective assistance of counsel "is a substantial one." *Martinez*, 566 U.S. at 14 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Whether a claim is substantial is determined by applying the two-prong test established in *Strickland*. First, Kenner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." [*Id.* at 687]. The first prong of the *Strickland* test, the performance prong, holds that in evaluating whether a trial counsel's performance was deficient that counsel's performance must be evaluated for "reasonableness under prevailing professional norms." [*Id.* at 688]. In assessing counsel's performance, a court must avoid second-guessing with the benefit of hindsight and must presume that counsel's performance was reasonable and adequate. [*Id.* at 689]. Counsel's performance is deficient where it fails to meet "an objective standard of reasonableness," judged according to "prevailing professional norms." [*Id.* at 687-88]. The second prong of the *Strickland* test requires that Smith must establish that counsel's substandard performance caused him prejudice.

In Claim (4), which alleges counsel went to trial without any "preparations," is conclusory. Kenner does not identify any specific preparation that counsel did not make, and he proffers nothing in support of the prejudice prong. *See Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."); *see supra* p. 8-9 & n.4

(discussing *Gilbert*, *Nickerson*, *Turcotte*, *Anderson*, and *Bassette*). Claim (4) fails to state a claim of ineffective assistance of counsel under either prong of *Strickland*, and is therefore not substantial as required by *Martinez.*

In Claim (5), Petitioner alleges his attorney was ineffective for not challenging his indictments as "multiplictious." As previously discussed, the indictments were not multiplictious. *See supra* n.5. Consequently, Claim (5) does not state a claim under either prong of *Strickland,* and is therefore not substantial as required by *Martinez. See also Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) ("Counsel is not required to engage in the filing of futile motions.").

In Claim (6), Petitioner alleges counsel was ineffective for not calling the victim's mother (Tara) at trial. It is evident from the record that if called, Tara could have testified about the victim's recent complaint, which would have bolstered the victim's testimony. *See* Dkt. No. 10-15 at 288-92.[8] Further corroboration of the victim's credibility would not have helped the defense. In addition, as noted previously, petitioner has failed to make a proper proffer of Tara's testimony, and therefore cannot establish prejudice. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced") (citation omitted); *see also United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (a defendant who faults counsel for not calling a witness cannot simply state the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance of counsel claim).[9] Claim (6) fails to state a

---

[8] Lisa Brittingham, a friend of Tara's, spoke with the victim on November 21, 2015, and the victim told her about the inappropriate touching of the victim's private parts by Petitioner. Brittingham had gone over to Tara's trailer at Tara's request because of what the victim had told Tara, who was in the bedroom while the victim and Brittingham talked.

[9] "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'" *Anderson*, 18 F.3d at 1221 (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)).

14

claim of ineffective assistance of counsel under either prong of *Strickland*, and is not substantial as required by *Martinez.*

### D. Actual Innocence

The "fundamental miscarriage of justice" exception applies where "a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Murray,* 477 U.S. at 495-96. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "[T]enable actual-innocence gateway pleas," however, "are rare." [*Id.*] "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell,* 547 U.S. 518, 536-37, (2006) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).

"To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). Kenner's claims are not premised upon new evidence, and the summary of the trial evidence, *supra* at p. 2-4, establishes no miscarriage of justice has occurred.

### III. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 556 U.S. 111,

121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *accord Renico v. Lett*, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); *see Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." *Lenz v. Washington*, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). AEDPA also limits federal habeas "review under § 2254(d)(1) . . . to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 18. "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." *Green v. Johnson*, 515 F.3d 290, 299 (4th Cir. 2008); *see Schriro*, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in *Strickland*, which imposes on the petitioner the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. *See Strickland*, 466 U.S. at 687. The Supreme Court has characterized AEDPA deference in the context of "a *Strickland* claim evaluated under the § 2254(d)(1) standard" as "doubly deferential judicial review." *Knowles*, 556 U.S. at 123; *see also Woods v. Etherton*, 578 U.S. 113, 117 (2016). "[B]ecause counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment' . . . federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" [*Id.*] (citations omitted). "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Valentino v. Clarke*, 972 F.3d 560, 581 (4th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102-03) (additional citation omitted).

*Strickland*'s first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." [*Id.* at 689]. The "basic lesson" of *Strickland* is that "judicial scrutiny" of counsel's performance must be "highly deferential." *United States v. Mason*, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." *Id.*

*Strickland*'s second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." [*Id.*] "The likelihood of a different result must be substantial, not just conceivable." *Valentino*, 972 F.3d at 580 (quoting *Harrington*, 562 U.S. at 86); *accord Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (quoting *Knowles*, 556 U.S. at 123).

**A. Claim D**

In Claim D, Kenner alleges that the trial court erred in refusing to grant his counsel's motion to withdraw.[10] The petitioner appealed this issue to the Court of Appeals of Virginia, which found that the trial court did not err. [Dkt. No. 7-8]. The Supreme Court of Virginia did not grant that assignment of error but affirmed the conviction of that issue without further comment. [Dkt. No. 7-13]. Thus, the Court of Appeals' decision was the last reasoned opinion on the issue and therefore this Court "looks through" to that decision to determine the state court's ruling. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).

The Court of Appeals of Virginia found that the claim involved an abuse of discretion, and that the appeal raised two issues—"that trial counsel did not have the time or resources to dedicate

---

[10] A portion of Claim D concerns the trial court's admission of evidence of child pornography "found on a computer in Lenny's room." [Dkt. No. 1-1 at 29]. The issue was resolved against Keener on appeal on the basis of state law. *Kenner*, 854 S.E.2d at 497-500 (court held trial judge did not abuse his discretion in balancing the probative value versus the prejudicial effect rests in the sound discretion of the trial court because "the evidence was relevant to show Kenner's conduct or attitude towards the victim, motive, method and intent"). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reviewing evidence's relevancy in determining whether trial court's admitting evidence of prior injuries resulted in fundamentally unfair trial). To the extent this portion of Claim D might be construed as raising a federal question, the resolution of the claim was not an unreasonable application of or contrary to federal law. *See Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (no due process violation where admission of other crimes evidence "was relevant to explain the facts surrounding the ... murders"); *see also Spencer v. Texas*, 385 U.S. 554, 564 (1967) (a state evidentiary rule "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar.").

to Kenner's defense and that trial counsel had a conflict of interest that affected his ability to represent Kenner." *Kenner I,* 835 S.E.2d at 115. The court construed the first issue as a claim of ineffective assistance of counsel, and declined to address the merits of that issue because "claims of ineffective assistance of counsel are not properly raised on direct appeal and must be raised in a separate habeas petition to the Supreme Court or the circuit court." [*Id.* at 115-16]. Continuing to the conflict of issue claim, the court noted that "'the possibility of conflict is insufficient to impugn a criminal conviction. [*Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)],'" and that "'[a]n actual conflict of interest exists when an attorney engages in wrongful conduct related to the client's trial.'" *Kenner I,* 835 S.E.2d at 116 (citation omitted). The court concluded that filing a bar complaint did not create an actual conflict of interest, stating that "even when filed by the defendant [a bar complaint] does not create a *per se* conflict of interest," and that "'the defendant must prove that actual wrongdoing by counsel occurred and that counsel's fear of disclosure of the wrongdoing caused counsel to be ineffective in a manner that prejudiced the trial result.'" [*Id.*] (citation omitted). Here, the trial court had found that no actual conflict existed, Kenner had not shown that the bar complaint had any foundation, and Kenner had not shown any prejudice. *Kenner I* held that "the circuit court did not abuse its discretion in denying the motion to withdraw based on a conflict of interest at that point in time because an actual conflict had not yet ripened." *Id.*

"An actual conflict of interest" requires that a defendant establish that the "conflict . . . affected counsel's performance — as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). "The Sixth Amendment does not guarantee a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). An actual conflict of interest creating a *per se* conflict of interest does not arise from issues with attorney time constraints; rather that claim should be raised as an ineffective assistance claim.

19

*United States v. Zackson*, 6 F.3d 911, 919-22 (2d Cir. 1993) (refusing to extend per se treatment to alleged conflict arising from attorney's time constraints).

The remaining ineffective assistance issue was arguably raised within the context of the motion to withdraw heard by the circuit court on April 12, 2017. At the April 12, 2017 hearing, Kenner testified that he believed his counsel had not "handled the evidence right" because thirty-five witnesses, the names of whom he had just provided counsel, but not their contact information, had not been subpoenaed, and a recording of jail telephone call between Kenner and another person had not been obtained. (4/12/17 Tr. at 5-7). He also complained that his counsel had not discovered the identity of the writer of an allegedly anonymous letter that had been secretly dropped off at the jail for Kenner. [*Id.* at 8].

On cross-examination, Kenner admitted that he had met with police in December 2016 regarding the anonymous letter, which recited that Angela Robinson, his fiancée, and her brother had conspired to put child pornography on his computer, with the brother crawling through the window of his bedroom to put the pornography on the computer, then deleting it, knowing that the FBI agents could find the artifacts, and that the brother and sister conspired to put a false story in the child's mind. [*Id.* at 14-15]. Kenner also stated that the thirty-five people were character witnesses, and did not see anyone "crawling through the window and putting stuff on the computer." [*Id.* at 18]. In describing the thirty-five witnesses, Kenner testified that most of them were children of people for whom he had baby-sat and taken care of, but that the "main ones" were people for whom he had "baby-sat their kids." [*Id*].

Defense counsel proffered that he did not have the resources to find the thirty-five witnesses, [*Id.* at 25], or the author of the anonymous letter, [*Id.* at 25-26], that there was a possibility of Angela Robinson, Kenner's fiancée, proving adverse that gave rise to "a potential

conflict" that might require counsel's testimony [*Id.* at 28], and that Kenner's sister had filed a bar complaint against counsel that was in the "inquiry" state. [*Id.* at 31]. Trial counsel also acknowledged that the Commonwealth had assisted by investigating the letter, and that he had all of the prosecutor's "information." [*Id*. at 39].

In response to defense counsel's proffer and argument, the Commonwealth noted that that trial counsel had seventeen months and had a previous continuance of six months to investigate the matter. The local police had also investigated the anonymous letter and found nothing to pursue. Petitioner's girlfriend filed a social services complaint after Kenner's arrest [*Id.* at 27-28], which made her a potential adverse witness. The Commonwealth looked into the complaint to determine if it was a malicious prosecution. The complaint involved another child, not the victim, and was filed after the girlfriend had found out about the child pornography on the computer. The mother wanted to determine if her "children were victims or participants," and was not malicious in nature. [*Id.* at 35-36]. In sum, the prosecutor noted that the case was not complex and, in essence, had two issues: the credibility of a child; and whether there was a nexus between the pornography on the computer and the defendant. [*Id.* at 34-36].

The trial court noted that Dunham had represented Kenner "since Day 1," that in March 2016, the matter had been scheduled for trial in November 2016, and then had been continued on defendant's motion until April 24, 2017, and that the motion to withdraw was filed on April 4, 2017, citing as a reason an impasse in communications between attorney and client and Kenner's lack of confidence in his counsel, and a disagreement over trial tactics. [*Id.* at 40-42]. The trial court denied the motions noting:

> Mr. Dunham is a seasoned criminal defense attorney who has been doing this type of work for years. It is not at all unusual in criminal cases for the client – the criminal defendants – to disagree with their attorney because they may not like what they're hearing, but the seasoned criminal defense attorneys have reviewed all the

evidence and are able to communicate, based on their experience in representing criminal defendants in court, you know, what the deal is.

And so, I'm not going to let you withdraw, Mr. Dunham. I can sympathize with you. I know it's a tough case, but I think the Commonwealth is entitled to have its day in court and there's been ample time, and the things that have popped up here at the last minute appear to be suspicious.

[*Id.* at 43-44].

The trial was subsequently continued to June 12, 2017; during the colloquy at the beginning of the trial proceedings, Kenner told the court that he understood the charges against him; that he had discussed them with his attorney; he understood what the Commonwealth had to prove before he could be found guilty; that he had sufficient time to discuss possible defenses with his counsel; and that he was pleading not guilty freely and voluntarily. [June 12, 2017 Tr. at 8-9]. Kenner told the court that "most" of the witnesses he wanted for trial were present, and that he was ready for trial. [*Id.* at 9] Kenner indicated that he was not satisfied with his attorney because his attorney had only subpoenaed "most" of his witnesses. [*Id.* at 11]. Kenner stated that "not even half" of his witnesses were present. [*Id.*]. The trial court noted that:

Previously in this matter Mr. Dunham had asked for leave to withdraw as counsel. The court denied that. This matter has been set for trial earlier and was continued to today's date. The Court has heard numerous motions *in limine* and other motions in this matter over the last several months. And the court specifically finds that Mr. Dunham has represented Mr. Kenner in a diligent and competent manner.

[*Id.* at 11-12]. During the course of the trial, neither Kenner nor his trial counsel renewed the motion for counsel to withdraw or raised an issue of a conflict of interest. In all, eleven defense witnesses testified, including Kenner's fiancée, who trial counsel had feared would be adverse. The other witnesses who were present when Kenner was babysitting said they never saw pornography or anything "odd" about Kenner's behavior toward the children and they trusted him; and other witnesses testified about the access to and use of the computer by persons other than Kenner. (6/13/17 Tr. at 330-409).

22

Here, the circuit court addressed the merits of his claim and its decision was not contrary to or based on an unreasonable application of established federal law or an unreasonable interpretation of the facts. Kenner had seventeen months to prepare and investigate and waited until almost the eve of trial to provide counsel with the names of thirty-five-character witnesses. Counsel was able to subpoena and obtain the presence of "most" of them despite having little time to identify addresses and obtain service. Trial counsel also had all of the prosecution's "information," and the local police investigated the anonymous letter and the prosecutor had been able to confirm that the social services complaint (which had been filed by the girlfriend after the discovery of the child pornography on the Petitioner's computer), was not filed out of malice but to determine if the fiancée's children were possible "victims or participants." The fiancée testified at trial and provided testimony that supported aspects of Kenner's defense, which included the daily routine, that her grandmother also lived in the apartment with Robinson, Kenner, the victim, the victim's brothers, and her children. She also testified that the two computers in the apartment (a desktop and a laptop) were hers, and that others used the computers and knew the passwords. (6/13/17 Tr. at 387- 94). As noted, other defense witnesses, who were in the apartment testified and supported the defense, which was that no one ever saw anything in appropriate and that several people had access to and used the computers. Kenner has not identified any specific unreasonable act or inaction of his trial counsel and he has not identified any prejudice to his defense. Even without AEDPA deference, Kenner failed to state a claim of ineffective assistance of counsel and this portion of Claim D will be dismissed.

### B. Claim (7)

In Claim (7), petitioner alleges that that counsel was ineffective for failing to object to the use of the child pornography for being "false evidence," which is in sum and substance the same

as a portion of federal Claim F. *See supra* at 10. In state habeas the Supreme Court of Virginia found that Kenner had failed to satisfy the *Strickland* standard for ineffective assistance of counsel regarding the child pornography evidence found on his computer.

> In another portion of claim (F), petitioner contends he was denied the effective assistance of counsel because counsel did not "know how to combat" the Commonwealth's motion *in limine* asking the trial court to allow the admission of evidence that child pornography was found on petitioner's computer.

> The Court holds this portion of claim (F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. Petitioner fails to articulate any argument counsel should have made, but did not, against the admission of the evidence, nor does he explain how such argument would have been more likely to succeed than the arguments advanced by counsel. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

> ****

> In another portion of claim (F), petitioner contends he was denied the effective assistance of counsel because counsel failed to seek a mistrial after discovering the child pornography found on petitioner's computer had been "falsely connected to him." Petitioner appears to allege counsel should have moved for a mistrial based on Robinson's purported post-trial claim that the pornography found on petitioner's compute[r] belonged to Hamilton.

> The Court holds this portion of claim (F) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates the pornography was found on a desktop computer in petitioner's home. A password-protected user account on the computer contained an email account with petitioner's name, an autofill profile for petitioner with his phone number and address, and social media accounts and a financial document in his name. The computer had been used to stream, download, or attempt to download numerous videos, the titles of which described sexual activity with young children, via a peer-to-peer network. In addition, the victim testified petitioner had shown her pornographic videos on his computer. Petitioner's counsel attempted to show numerous individuals who lived at or stayed at petitioner's residence had access to his computer. Robinson, who lived with petitioner in the residence and described herself as the mother of his children, testified the computer was used by everyone in the house and that everyone knew the password. Robinson testified Hamilton had at one point stayed at the house and that he was permitted to use the computer. Robinson further testified she worked two jobs and was usually at work from 7:00 a.m. until 10:00 p.m.

> Petitioner does not proffer the specifics of Robinson's purported post-trial allegation against Hamilton. He does not explain the basis of her claim or otherwise

provide any support for it. Under the circumstances, petitioner has not shown counsel was unreasonable for failing to move for a mistrial based on a bare allegation that the inculpatory evidence belonged to Hamilton. Nor has petitioner demonstrated a reasonable probability such a motion would have been successful. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

[Dkt. No. 7-16 at 3-6].

Kenner has not advanced any objection that counsel should have raised that counsel did not raise during the motion *in limine*, or any basis for counsel to have sought a mistrial based solely upon Kenner's current conclusory allegations with no proper proffer. At the hearing on the motion *in limine*, counsel argued that the child pornography has not been linked to Kenner or proved that he downloaded the files, others had access to the computer in which the child pornography was found, the prejudice to Kenner outweighed the probative value. (Jan. 24, 2017 Tr. at 40-44). The trial limited the child pornography evidence that the prosecutor could introduce at trial, admitted the evidence at trial, and the admission of the evidence was affirmed on appeal.[11] *Cf. Washington v. Murray*, 952 F.2d 1472, 1481 (4th Cir. 1991) (counsel not ineffective for failing to object to evidence introduced at trial because even if inadmissible at trial, the subsequent rulings have found it is admissible and therefore if there was a retrial the evidence would be admissible and thus petitioner cannot establish prejudice); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (even if counsel was ineffective in litigating a motion to suppress, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual

---

[11] Kenner's claims ignore the fact that the victim testified that she watched videos on the computer with Kenner, which links him to the computer and the "sex" videos, which the victim testified showed adults were not wearing clothes and she could see "their privates." (June 12, 2017 Tr. at 101-04). In the videos, the victim testified that the male adult put "his" privates in the "girl's private." (*Id.* at 104). The victim was alone when Kenner touched her private parts, and he told her not to tell anyone about the touching and the videos. (*Id.* at 102, 105).

25

prejudice"); *Moody*, 408 F.3d at 151 (holding counsel not required to file frivolous motions).[12] The state court decision dismissing these claims of ineffective assistance of counsel was neither contrary to, nor involved an unreasonable application of, clearly established federal law and the claims will be dismissed.

### C. Claim (8)

In Claim (8), as well as in a portion of federal Claim F, Kenner alleges counsel was ineffective because he failed "to poll the jury in a timely manner having seen some jurors come out of the deliberations room shaking their heads in clear disagreement." [Dkt. No. 1-2 at 3].[13] The state habeas court found that this claim did not satisfy the prejudice prong of the *Strickland* test for ineffective assistance of counsel.

> In a portion of claim (F), petitioner contends he was denied the effective assistance of counsel because counsel failed to timely request the court poll the jury to ensure the guilty verdicts were unanimous. Petitioner alleges counsel waited until after the jury had received sentencing instructions to request the jury be polled, and that the trial court denied the request as untimely. Petitioner further alleges that when the jury entered the courtroom after reaching their verdicts, some of them were "shaking their heads in clear disagreement."
>
> The Court holds this portion of claim (F) fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*. The record, including the trial transcript, demonstrates that after the jury returned the guilty verdicts, the clerk read them aloud and asked the jury "so say you all?' The transcript reflects that, in response, there was a "[c]horus of yes[es] from the jury panel." After the jury had been provided with sentencing instructions, petitioner's counsel move[d] to have the jury polled, contending that, while it had not immediately occurred to him to have the jury polled, he noticed that when the jury entered the courtroom "some people were shaking their head looking down." The court denied the motion as untimely, but also found that when the clerk had asked "[s]o say you all[,] ... it appeared that all said yes." Petitioner fails to identify the jurors he contends were shaking their

---

[12] The Fourth Circuit, citing *Kimmelman*, held that to prove prejudice for not filing a motion to suppress a petitioner alleging ineffective assistance of counsel must demonstrate that "an unfiled" suppression motion "would have had some substance," that "the [suppression] motion was meritorious and likely would have been granted," and that there is "a reasonable probability that granting the motion would have affected the outcome of his trial." *Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 524-525 (4th Cir. 2016). Kenner has failed to establish the required prejudice.

[13] As the record reflects, the jury was actually polled after they returned the guilty verdicts, and the sentences. In each instance, the jurors responded with a "chorus" of yeses. The Court reviews this claim as one alleging counsel filed an untimely motion to have the jurors individually polled.

> heads, to provide any support for his allegation that they were doing so in disagreement with the verdict, or to otherwise proffer any support for the proposition that, had counsel timely requested the jury be polled, one or more of the jurors would have repudiated the verdict. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

[Dkt. No. 7-16 at 3-5]. The record reflects that the jury was instructed that its verdict had to be unanimous; each juror "must decide the case for themselves" in consultation their fellow jurors; and the jury was polled after the return of the verdicts of guilty and the sentences imposed and in each instance the jurors responded that with a "chorus" of yeses. In sum, the record supports that the verdict was unanimous. (June 13, 2017 Tr. at 456-63, 474-75). The state court decision dismissing the claims of ineffective assistance of counsel because Petitioner had failed to prove prejudice was neither contrary to, nor involved an unreasonable application of, clearly established federal law and the claims will be dismissed.

### D. Claim (9)

In claim (9), Kenner alleges that his appellate counsel failed to mention the "false evidence used against him." This same allegation of ineffective assistance is included in federal Claim F. The state habeas court held that this claim failed to satisfy the *Strickland* standard.

> In another portion of claim (F), petitioner contends he was denied the effective assistance of counsel because counsel failed to meet with petitioner prior to filing his petition for appeal. As a result, counsel did not know false evidence was used to convict petitioner. Consequently, counsel failed to raise this issue on appeal. Petitioner contends appellate counsel could not have known about this issue except by consulting with petitioner because trial counsel failed to raise it, so it did not appear in the record. The Court holds this portion of claim (F) fails to satisfy the "prejudice" prong of the two-part test enunciated in *Strickland*.
>
> The Court holds that this portion of claim (F) fails to satisfy the "prejudice" prong of the two-part test established in *Strickland*. Petitioner fails to identity the false evidence counsel should have raised on appeal. Furthermore, he concedes the issue was not apparent from the record and had not been preserved for appeal. Consequently, he cannot show that, had counsel consulted with petitioner and agreed to raise this issue, it would have been considered on the merits on appeal and that the ultimate outcome of his case would have been different. See Rules

27

5:25, 5A:18. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

[Dkt. No. 7-16 at 4]. The state court decision dismissing the claim of ineffective assistance of counsel because Petitioner had failed to prove prejudice was neither contrary to, nor involved an unreasonable application of, clearly established federal law and the claims will be dismissed.

### E. Remaining Portion of Federal Claim F

The remaining portion of federal Claim F, that counsel was ineffective for only calling ten of the thirty-five witnesses subpoenaed, was addressed separately by the state court in the state habeas proceedings. The respondent has subsumed this portion of Claim F into several of Kenner's other claims, in large part due to the lack of structure in the § 2254 petition and the attachments thereto. The state court dismissed this claim finding that Kenner had failed to state a claim of ineffective assistance of counsel under either prong of *Strickland* because that Kenner had "not identified the witnesses he alleges counsel failed to call, proffered the substance of their expected testimony, or articulated how such testimony would have benefitted his case." [Dkt. No. 7-16 at 5-6]. The state court decision dismissing this claim of ineffective assistance of counsel was neither contrary to, nor involved an unreasonable application of, clearly established federal law and the claims will be dismissed.

[intentionally left blank]

28

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 5] will be granted.

An appropriate Order and judgment shall issue.[14]

Alexandria, Virginia
June 5, 2023

Anthony J. Trenga
Senior U.S. District Judge

---

[14] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.